IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DAKODA STUBBLEFIELD                                              PLAINTIFF

V.                                       CIVIL ACTION NO.  3:14CV886 HTW-LRA

CAROLYN W.  COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Dakoda Stubblefield appeals the final decision denying his childhood disability application for supplemental security income ("SSI").  The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

On August 11, 2010, three weeks before his 18th birthday, Stubblefield filed an application for SSI, alleging a disability onset date of August 1, 2010, due to back pain and borderline intellectual functioning.  Plaintiff dropped out of school in the 11th grade and has no past relevant work experience except for washing cars on an intermittent basis.  Following agency denials of his application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review.  He now appeals that decision.

After reviewing all the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and was not entitled to childhood or adult disability benefits.  At step one of both the child and adult sequential evaluations, the ALJ declined to address whether the evidence established that Plaintiff had engaged in substantial gainful activity.  At steps two and three of both evaluations, the ALJ found that Plaintiff's borderline intellectual functioning was a severe impairment, but the medical evidence did not support listing-level severity before or after Plaintiff's 18th birthday on August 30, 2010.  With respect to the six demands of function applicable to children, the ALJ found Plaintiff had less than marked limitations in acquiring and using information, and in attending and completing tasks, but no limitations in any other domain.  Accordingly, the ALJ concluded that Plaintiff was not entitled to childhood disability benefits before he turned 18 years old.

In the five-step evaluation process, the ALJ determined that Plaintiff had not developed any new impairments since turning age 18.  She also found the Plaintiff's subjective complaints and testimony concerning the intensity, persistence and limiting effects of his symptoms and their associated functional limitations were not fully credible. The ALJ concluded that since turning age 18, Plaintiff has had the residual functional capacity to "perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant is limited to performing only simple, routine tasks."  Relying on this residual capacity finding and the Medical-Vocational Guidelines, the ALJ concluded at steps four and five of the adult evaluation process that Plaintiff had

2

no past relevant work experience; but, he could perform jobs existing in significant

numbers in the national and regional economies.

### Childhood Disability Standard

In order for a child to be found disabled and entitled to SSI benefits, he or she must

have a "medically determinable physical or mental impairment, which results in marked

and severe functional limitations, and which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 1382c(a)(3)(C)(I).   When evaluating a child's eligibility for disability

benefits, an ALJ engages in a three-step sequential process, which considers:

(1)    whether the child is doing substantial gainful activity;

(2)    if not, whether the child has a medically determinable "severe"
       impairment or combination of impairments; and

(3)    if so, whether the child's impairment or combination of impairments
       meets, medically equals, or functionally equals the severity of an
       impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*See* 20 C.F.R. § 416.924 (b)-(d).  If a child's impairment does not meet, medically equal,

or functionally equal a listed impairment, the child will not be considered disabled.

Functional equivalency is measured according to six domains of function: (1) acquiring

and using information; (2) attending and completing tasks; (3) interacting and relating

with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6)

health and physical well-being.  20 C.F.R. § 416.926a(b)(1); *see also Harris v. Apfel*, 209

F.3d 413, 417 (5th Cir. 2000) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990)).

To be functionally equivalent to a listing, the impairment must result in either a "'marked' limitation in two domains of functioning or an 'extreme' limitation in one domain. . . ." 20 C.F.R. § 416.926a(a).  A marked limitation interferes seriously with the child's ability to "independently initiate, sustain, or complete activities," while an extreme limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. §§ 416.926a(e)(2)(I) & 416.926a(e)(3)(I).

### Adult Disability Standard

An adult claimant's entitlement to disability benefits hinges on whether he or she can establish his or her inability "to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting 42 U.S.C. §§ 416(I), 423(d)(1)(A)).  The Commissioner reviews the evidence of disability offered by the claimant and evaluates the evidence by using a five-step sequential evaluation.[1]  The burden of proof on the first four steps falls on the claimant; the burden of proof on the last step – whether a claimant

---

[1] Under 20 C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantially gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

can perform work existing in significant numbers in the national economy – rests with the Commissioner.

**Discussion**

Plaintiff assigns three errors on appeal:  the ALJ (1) failed to properly evaluate the medical opinion evidence; (2) failed to properly consider all of his functional limitations; and, (3) failed to sustain the Commissioner's burden at step five by establishing the existence of other work that Plaintiff can perform.  The Court rejects these arguments for the reasons that follow.

**1.      Substantial evidence supports the ALJ's assessment of the medical opinion evidence.**

As his first point of error, Plaintiff alleges the ALJ discounted evidence establishing mental retardation by failing to properly weigh medical opinions, principally those of consulting psychologist, Dr. Jan Boggs.  The evidence of record indicates that Dr. Boggs evaluated Plaintiff three times over the course of several years:  March, 2006, October, 2009, and December, 2010.  The first evaluation was in 2006 when Plaintiff was only 13 years old.  Based on his testing and observations at that time, Dr. Boggs diagnosed Plaintiff with mild mental retardation.  Although the record indicates that Plaintiff had previously scored a full-scale I.Q. of 81 when the school system administered the test in 1999, Plaintiff obtained a full I.Q. score of only 63 on the

Wechsler Intelligence Scale for Children, III Edition, when Dr. Boggs administered it in

2006.[2]

 Dr. Boggs subsequently re-evaluated Plaintiff when he was 17 and 18 years old,

and concluded that his mental-retardation diagnosis was premature.  Upon further

examination, Dr. Boggs observed that Plaintiff was underperforming and malingering on

testing in 2009, and diagnosed him with, *inter alia*, "rule out" borderline intelligence in

2010.  When analyzing Dr. Boggs's opinions, the ALJ noted as follows:

> . . .  [B]ased on his answers during the interview and testing attempted in
> 2009, Dr.  Boggs stated: "In reviewing tests results on this claimant, he may
> have deliberately underperformed on my previous testing of him in March
> 2006.  In any case, I prematurely diagnosed him as being in the mildly
> mentally retarded range."  On the Wide Range Achievement Test-IV
> (WRAT-IV) Dr. Boggs attempted to administer in 2009, the claimant had
> scores of 55 on math and reading.  For example, on written problems, he
> missed "5 minus 1" and "36 minus 15," and he omitted an answer for "3
> times 4."  Dr. Boggs determined this to be a very weak result on a skill in
> which he formerly scored well.  In fact, his calculation score was 84, ten
> years earlier in 1999.  Dr. Boggs also noted the claimant misstated the
> month and day and he opined that could have been part of the claimant's
> "malingering process as observed on the testing."  Due to the claimant's
> responses or lack thereof, Dr. Boggs stated that he did not try to take the
> testing any further, and his primary diagnosis at the time was
> "malingering."
>
> Dr.  Boggs again attempted testing in December, 2010; at this
> administration of the Wechsler Adult Intelligence Scale – III (WAIS III),
> the claimant obtained intelligence quotients of verbal 68, performance 74
> and full scale 68.  Dr.  Boggs compared these scores to previous scores on
> the Woodcock-Johnson Assessment Battery, noting the prior scores were
> much higher.  His opinion was the claimant's previous outcomes were more
> indicative of the claimant's capability, and that he still appeared to be
> under-responding for the sake of disability.  The claimant exhibited a

---

[2]ECF No.  8, pp.  255-58.

pattern of response at the examination in which he missed easy items and correctly answered the more difficult ones.[3]

In weighing the evidence, the ALJ explained that Dr. Boggs's clinical estimate of borderline intellectual functioning was consistent with the evidence as a whole, rather than based on test results alone.  Plaintiff's adaptive functioning abilities, for example, exceeded "any which would suggest mild mental retardation."  While Plaintiff appeared to miss easy math problems on examination, his mother indicated that he was able to manage a checkbook, pay bills, and shop via mail, as well as in the store.  Plaintiff was also able to drive a car and understand the rules of the road; attend church and maintain a social life;  and, enjoyed hunting and fishing before injuring his back.  The ALJ noted further:

> . . . In addition, despite 31 unexcused absences out of 62 days of enrollment in the 11th grade, he achieved a grade of 96 in English.  Although this was a Special Education score, the exceptionally high grade implies greater ability than the claimant has demonstrated on consultative testing.  At the hearing, he also testified that he passed one part of the certificate of general educational development, which would generally require reading at a higher level than the claimant has been willing to demonstrate on ordered testing.  All of these abilities are a further indication that the claimant's functioning is borderline, rather than even mildly retarded.[4]

The ALJ went on to state that while she considered all of the evidence including Plaintiff's test scores, "reliability (and related validity) is bolstered through consistent results, and the claimant's results were obviously skewed by his demeanor and

---

[3]ECF No.  8, pp. 18-19, 255-58, 328-31, 355-58.

[4]ECF No. 8, p. 19.

behaviors."[5] Although Plaintiff objects to this assessment, an ALJ may make factual determinations on the validity of I.Q. tests when supported by substantial evidence. *Muse v. Sullivan*, 925  F.2d 785, 790 (5th Cir. 1991).  Here, Dr. Boggs explicitly questioned the validity of Plaintiff's I.Q. scores based on firsthand observation of his intellectual functioning on three different occasions.  His findings provide substantial evidence to support the ALJ's finding that Plaintiff did not have even mild mental retardation.

Plaintiff counters that the ALJ failed to adequately consider test scores submitted by Jennifer Whitcomb, Ph.D. – a licensed professional counselor who administered the WAIS-IV at Plaintiff's request in July 2011.  Dr. Whitcomb's results indicate that Plaintiff's full scale I.Q. was 65, which was consistent with Dr. Boggs's testing.  However, the ALJ noted that as a licensed professional counselor, there was no evidence that Dr. Whitcomb ever took a licensing examination or completed any licensing requirements to perform intelligence testing.  Plaintiff points out that Dr. Whitcomb's results were reviewed by her colleague and qualified psychologist, Dr. Patricia M. Sandusky.  But as the ALJ found, Dr. Sandusky did not review Dr. Whitcomb's results until over a year later.  Further, there were "no indications that Dr. Sandusky was present when the test was administered to determine whether, in her qualified professional

---

[5]ECF No.  8, p.  20.

judgment, the claimant displayed adequate attention and effort (or that the test items themselves were appropriately administered)."[6]

Our case law is clear.  "The ALJ may make credibility and weight determinations as to all medical opinions."  *Huskey v. Colvin*, 560 F. App'x 367, 370 (5th Cir.  2014). An ALJ is free to reject any medical opinion, in whole or in part, when good cause is shown.  Good cause exists when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995).

Given the "totality of the evidence, including, but not limited to, the claimant's adaptive functioning abilities, the variability of scores on the claimant's intelligence based tests, the validity and reliability of the test scores, and the comparative qualifications and experience of the examiners," the ALJ reasonably concluded that Plaintiff has the severe impairment of borderline intellectual functioning, rather than mild mental retardation.[7]

As to Plaintiff's claim of error, reversal and remand is only required when error affects the substantial rights of the plaintiff.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  Errors are prejudicial only when they "cast doubt onto the existence of substantial evidence" supporting the ALJ's decision.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.

---

[6]ECF No.  8, pp.  20, 388-90, 395.

[7]ECF No.  8, p.  21.

1988).  No such doubt has been cast here.  As the Commissioner argues, even if Plaintiff could show that he suffered from mild mental retardation, he has not shown he was prejudiced by the ALJ's residual functional capacity finding limiting him to simple, routine tasks.

### 2.      Substantial evidence supports the ALJ's assessment of Plaintiff's functional limitations before and after attaining age 18.

The undersigned also rejects Plaintiff's second assignment of error that the ALJ failed to properly evaluate his functional limitations at step three of the sequential analysis.  In evaluating the evidence, the ALJ considered whether Plaintiff's borderline intellectual functioning met or equaled Listings 112.02 or 12.02 for Organic Mental Disorders for childhood and adult impairments respectively.

### A.      Listing 112.02

Specifically, the ALJ evaluated whether Plaintiff's borderline intellectual functioning resulted in at least *two* of the following to meet or equal Listing 112.02: marked impairment in age-appropriate cognitive/communicative function; marked impairment in age-appropriate social functioning; marked impairment in age-appropriate personal functioning, or marked difficulties in concentration, persistence or pace.  *See* Listing 112.02 (B)(2) (a)-(d).  As evidence, the ALJ examined the childhood disability evaluation reports submitted by State agency physicians:  Dr. Lisa Yazdani, Dr. Carol Kossman and, Dr. Jesse Dees; the cumulative opinions and findings of Dr. Boggs; and,

the third party function reports submitted by Plaintiff's mother, as well as Plaintiff's

testimony.

No physician of record opined that Plaintiff had marked impairments to meet or

medically equal the age-appropriate criteria of Listing 112.02.  Nor did any physician

conclude, as further discussed herein, that Plaintiff had the requisite marked or extreme

limitations in the six domains of function to functionally equal the listings.  In September

2009, Dr. Yazdani opined that Plaintiff's only marked impairment was in acquiring and

using information.  In January 2011, Dr. Jesse Dees concurred.   The ALJ noted that

while Plaintiff's performances on standardized achievement tests and consultative

examinations would support such an assessment, given other indications, including

Plaintiff's malingering, the evidence established moderate, not marked limitation in

cognitive/communicative functioning.  The ALJ assigned greater weight instead to Dr.

Kossman's  February 2011 assessment indicating Plaintiff had no marked impairments in

any domains of function, as this was most consistent with the evidence as a whole.[8]

The ALJ additionally found that Plaintiff was only moderately limited in age-

appropriate concentration, persistence, and pace, and mildly limited in age-appropriate

social and personal functioning.  Plaintiff had socialized with several friends, attended

church twice a week, respected authority, and worked intermittently at a car dealership

washing cars after quitting school in the tenth grade.  Although he had difficulty getting

along with teachers as a child, he had no trouble getting along with others.  Language and

---

[8] ECF No.  8, pp.  23, 337- 342, 359-87.

speech deficits mildly limited his ability to follow complicated written instructions, but the evidence as whole indicated Plaintiff was mildly limited in personal and social functioning.  He was able to pass his driver's license examination, as well as a portion of the general education development test before 18 years old, and he even obtained proficient scores on portions of state testing despite his placement in special education classes.  Accordingly, the ALJ found that Plaintiff had no marked limitations in any age-appropriate category to meet Listing 112.02.

The ALJ then considered the same substantial evidence to determine whether Plaintiff's impairments functionally equaled Listing 112.02 before turning 18.  In making this determination, the ALJ found that Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of his impairments were not entirely credible. When a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make credibility findings and they are entitled to considerable deference.  *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008).

The childhood disability evaluation reports of Drs. Dees, Yazdani, and Kossman, established that Plaintiff had less than marked limitations in the domains of acquiring and using information, and attending and completing tasks, but no limitations in any other domain.  Plaintiff argues that the ALJ's functional analysis failed to address his speech or language disorder.  But the ALJ acknowledged Plaintiff's reading difficulties and noted that he was able to communicate well enough to make good grades in his classes.  His

mother also indicated that his speech could be understood most of the time by those who do not know him.  He could also answer the phone and deliver phone messages; talk with family and friends; and, understand, carry out, and remember simple instructions.  The ALJ also found it noteworthy that Plaintiff communicated well at the administrative hearing.  It is not our role to re-weigh the evidence.  These are "precisely the kinds of determinations that the ALJ is best positioned to make," as he or she is able to observe the claimant first-hand.  *Falco v. Shalala*, 27 F.3d 160, 164 (5ᵗʰ Cir. 1994).  *See also Villa v. Sullivan*, 895 F.2d 1019 (5ᵗʰ Cir.1990) (ALJ properly considered Plaintiff's demeanor during administrative hearing as one of many factors in assessing credibility).[9]

## B.    Listing 12.02.

The evidence also failed to establish that Plaintiff met Listing 12.02 for Organic Mental Disorders after attaining age 18.  Objective evidence failed to demonstrate that Plaintiff had psychological or behavioral abnormalities associated with brain dysfunction, or the "presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities."  20 C.F.R. Part 404, Subpt.P., App. 1, § 12.02.   It also failed to demonstrate, among other things, "a loss of specific cognitive abilities or affective changes."  20 C.F.R. Part 404, Subpt.P., App. 1, § 12.02 (A).  He did not have at least two marked impairments in the following areas:  activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of

---

[9]ECF No.  8, pp.  195-204.

extended duration.  20 C.F.R. Part 404, Subpt.P., App. 1, § 12.02 (B).  Nor was there a

medically documented history of a chronic organic mental disorder of at least two years'

duration causing, among other things, more than a minimal limitation in his ability to do

basic work activities.  20 C.F.R. Part 404, Subpt.P., App. 1, § 12.02 (C).  Further, there

was "no evidence that even a minimal increase in mental demands or change in the

environment would be predicted to cause Plaintiff to decompensate; there was no history

of an inability to function outside a highly supportive living arrangement; and no

evidence that Plaintiff was completely unable to function outside the area of his home

environment."[10]

Since attaining age 18, the ALJ noted that Plaintiff attends to his personal needs,

drives, cooks, shops, maintains relationships with friends and family, attends church, and

continued to wash cars intermittently.  Although he could perform some, but not all tasks

during the consultative examination, he was capable of following directions and handling

money.  At most, Plaintiff had only moderate difficulties with concentration, persistence,

and pace, which is insufficient to meet Listing level criteria of 12.02.

Significantly, Plaintiff does not challenge the ALJ's finding that he did not satisfy

Listings 112.02 or 12.02.  He contends that the ALJ should have evaluated his mental

impairment under Listings 112.05 (D) and 12.05 (C) for Intellectual Disability (mental

retardation) for childhood and adult impairments respectively.  20 C.F.R. Part 404, Subpt.

P., App. 1 § § 112.05 (D), 12.05 (C).  Having determined that Plaintiff's mental

---

[10]ECF No.  8, p.  35.

14

impairment did not rise to the level of mental retardation, the ALJ was not required to evaluate Plaintiff's impairments under the listings for mental retardation.  Substantial evidence supports the ALJ's conclusions that Plaintiff's I.Q. scores were "skewed by his demeanor and behaviors."

Furthermore, to meet or equal a listing, all the listing criteria must be met.  *Zebley*, 493 U.S. at 530.  Both Listings 112.05 (D) and 12.05 (C) require not only that the valid I.Q. scores be present, but that a physical or other mental impairment imposing an additional and significant work-related limitation of function be present as well. Although Plaintiff alleged back pain at the administrative hearing, the evidence failed to establish a severe impairment or work-related limitation of function.  Plaintiff does not challenge the ALJ's finding that his back pain is not severe.

In summary, the ALJ committed no error warranting reversal or remand at step three.  Substantial evidence supports her determination that Plaintiff's impairments did not meet or equal the listings before or after turning age 18.

**3.     Substantial evidence supports the ALJ's finding at step five.**

As his final point of error, Plaintiff argues that the ALJ failed to sustain the Commissioner's burden at step five by establishing the existence of other work that Plaintiff can perform.  Specifically, he asserts the ALJ erred in exclusively relying on the Medical-Vocational Guidelines (the "Grid Rules") instead of vocational expert testimony at step five.  Use of the Grid Rules "is only appropriate 'when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional

impairments do not significantly affect his residual functional capacity.'"  *Watson v. Barnhart*, 288 F.3d 212, 216 (5th Cir.  2002) (quoting *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999)).  If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy.  *Newton*, 209 F.3d at 458.  Accordingly, before applying the Grid Rules, the ALJ must determine whether a claimant's nonexertional limitations significantly affect the claimant's residual functional capacity.

In the present case, the ALJ found that since attaining age 18, Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, except his nonexertional limitations limit him to performing only simple, routine tasks.  The ALJ then made the following finding at step five:

> However, ***these limitations have little or no effect on the occupational based of unskilled work at all exertional levels.***  A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.[11]

Plaintiff argues that the ALJ's finding that his nonexertional limitations "have little or no affect" on his ability to perform unskilled work is inconsistent with the finding that his borderline intellectual functioning is a severe impairment at step two.  By definition, he argues, as a severe impairment, his borderline intellectual functioning significantly limits his ability to perform work-related activities, and the ALJ's failure to obtain

---

[11]ECF No.  8, p. 39.

16

vocational expert testimony was error, particularly because his residual functional capacity limitation to simple, routine tasks may represent only a subset of unskilled work.

Plaintiff appears to be relying on a line of cases from the Fifth Circuit holding, or intimating, that a finding of a severe nonexertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five. *See e.g., Loza v. Apfel,* 219 F.3d 378, 399 (5th Cir. 2000) ("[I]f it should be determined on remand that [claimant's] non-exertional mental impairments during the period of disability were not merely a slight abnormality of minimal effect on ability to work, the ALJ's reliance on the Grid Rules at the fifth level also constitutes error and must be reconsidered." ); *White v. Astrue*, 239 F. App'x 71, 73- 74 (5th Cir. 2007) ("An ALJ's finding of a severe nonexertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five."); *Hearne v. Barnhart*, 111 F. App'x 256, 257-58 (5th Cir. 2004) (holding that a finding of severe depression prevented application of the Grid Rules alone to satisfy the Commissioner's step five burden); *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986) (ALJ erred in applying the Grid Rules at step five after finding that Plaintiff's has a severe emotional impairment).[12]

However, Plaintiff's reliance on these cases is misplaced. Borderline intelligence does not qualify as the sort of "nonexertional impairment" contemplated at step five. The

---

[12]*Parks v. Colvin*, No. 5:13-CV-102-C, 2014 WL 982865 (N.D. Tex. Mar. 12, 2014) (ALJ's finding of severe nonexertional impairments at step two prevents an ALJ from applying the grid rules at step five); *Milligan v. Colvin*, No. 2:12-CV-101, 2013 WL 5345842 (N.D. Tex. Sept. 24, 2013) (holding same); *Barnes v. Astrue*, 4:11CV-S26-Y, 2012 WL 1548923 (N.D. Tex. Mar. 5, 2012) (holding same).

Fifth Circuit has long held that although mental retardation qualifies as a nonexertional impairment, "[b]elow-average intelligence alone does not constitute a non-exertional impairment" precluding application of the Medical-Vocational Guidelines. *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990). "[B]orderline intelligence is not merely an *insufficient* non-exertional limitation; it is not a non-exertional limitation *at all*." *Arce v. Barnhart*, 185 F. App'x 437, 439 (5th Cir. 2006) (emphasis in original) (claimant's borderline intelligence did not significantly affect her residual functional capacity); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (holding ALJ did not err in relying solely on the grids because claimant's subaverage mental capacity did not constitute a nonexertional limitation); *Acosta v. Apfel*, 162 F.3d 93 (5th Cir. 1998) (rejecting Plaintiff's argument that ALJ was precluded from relying solely upon the Grid Rules because borderline I.Q. scores do not constitute a nonexertional impairment); *Collins v. Sullivan*, 985 F.2d 556 (5th Cir. 1993) (holding ALJ did not err in applying the Grid Rules to conclude that claimant was not disabled because Plaintiff's below-average intelligence does not constitute a nonexertional impairment).

Further, the ALJ's finding that Plaintiff's limitations secondary to his borderline intelligence "have little or no effect on the occupational base of unskilled work at all exertional levels" is substantially supported by the evidence. *See Guillory v. Barnhart*, 129 F. App'x 873 (5th Cir. 2005) (affirming the denial of benefits where the claimant's nonexertional impairments "did not significantly affect her ability to perform the base of jobs she was otherwise capable of performing given her age, education, and exertional

limitations").[13]  There is substantial evidence to support the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his mental limitations were not credible to the extent alleged.  The evidence as a whole indicated that he retained the capacity to perform simple, routine unskilled tasks without exertional limitations.

Nonetheless, Plaintiff argues that a vocational expert was still required to determine what jobs were available in the national economy because his residual functional capacity limitation to simple, routine tasks may represent only a subset of unskilled work.  Absent expert testimony, Plaintiff contends that "[i]t cannot be determined which jobs Plaintiff can perform or how many such jobs exist and whether that constitutes a significant number."[14] This argument is not well taken.

The Grid Rules permit the Commissioner to take administrative notice of jobs in the national economy that a claimant can perform.  *See* 20 C.F.R. § 404.1566(d). Accordingly, the Grid Rules "alone amount to substantial evidence, thus eliminating the need for testimony from a vocational expert, where the claimant suffers from non-

_____

[13]*Martin v. U.S. Commissioner Social Sec.*,  No. 06-1349, 2008 WL 294487, at *1 (W.D. La. Feb. 1, 2008) ("Considering that Plaintiff is expected to perform only unskilled light work, a reasonable mind could make credible evidentiary choices and accept the evidence of record as adequate to support a conclusion that Plaintiff did not have a significant mental impairment for purposes of step five.");  *Ortiz v. Secretary of Health and Human Services,* 890 F.2d 520, 524 (1st Cir. 1989) (so long as the nonexertional limitation is "justifiably found to be substantially consistent with the performance of the full range of unskilled work, the Grid retains its relevance and the need for vocational testimony is obviated").

[14]ECF No. 10, p.  22.

exertional limitations that do not significantly affect [the] capacity for work." *Stokes v. Shalala*, 7 F.3d 229 (5th Cir. 1983) (citations omitted).  In this case, the Grid Rules provide that there are "approximately 2,500 separate medium, light and sedentary unskilled occupations, each representing numerous jobs in the national economy."[15]  The ALJ noted that these jobs can be performed following a short demonstration, or within 30 days, without special skills or experience.  Such evidence substantially supports the ALJ's step-five finding.

In summary, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that Plaintiff's Motion for Summary Judgment [9] be denied; that Defendant's Motion to Affirm the Commissioner's Decision [11] be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of

---

[15]ECF No.  8, p.  40.

the objection, the opposing party must either serve and file a response or notify the

District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the

proposed findings, conclusions, and recommendations contained within this report and

recommendation, shall bar that party, except upon grounds of plain error, from attacking

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b); *Douglas v. United Services*

*Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 10th day of February 2016.


/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE